UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CARLA MERRIWETHER, et al.,

    Plaintiffs,

v.

    Case No. 19-11854
    Honorable Victoria A. Roberts

TEMPLE PLAZA HOTEL, INC. d/b/a
BOUZOUKI CLUB, et al.,

    Defendants.

_____/

**ORDER DENYING DEFENDANT KEFALLINOS' MOTION FOR SUMMARY JUDGMENT [ECF No. 32].**

**I.    Introduction**

Carla Merriwether and Ami Coleman are dancers at the Bouzouki adult club in Detroit ("Bouzouki"). Allegedly, they are employed not only by the club but by its owner as well—Dennis Kefallinos. Plaintiffs seek unpaid wages and overtime compensation. They say Kefallinos is individually and severally liable for these unpaid wages.

Merriwether and Coleman, on behalf of themselves and all others similarly situated, bring claims under the Fair Labor Standards Act 29 U.S.C. 201, et seq ("FSLA").

1

Before the Court is Kefallinos' motion for summary judgment. He says he is not an employer and not responsible for complying with FLSA's obligations. Kefallinos also argues that there is no genuine issue of material fact because Plaintiffs failed to establish that he acted as their employer and that he committed willful acts in violation of FLSA. [ECF No. 32, PageID.326].

Kefallinos's motion mentions only in passing that Plaintiffs are independent contractors, not employees. He does not brief this issue and the Court will not address it. Whether a FLSA plaintiff is an employee is a mixed question of law and fact. *Keller v. Miri Microsystems LLC*, 781 F.3d 799, 806 (6th Cir. 2015). If this case goes to trial, a jury will find the facts relevant for the Court to decide if Plaintiffs are independent contractors or employees.

Because Plaintiffs submit evidence that could lead a reasonable jury to conclude that Kefallinos was their employer, the Court **DENIES** Kefallinos' motion for summary judgment.

## II.     Background

Plaintiffs' lawsuit includes fifteen individuals who were employed as dancers at the Bouzouki, owned by Defendants Temple Plaza Hotel, Inc.

("Temple") and Temple's sole shareholder Kefallinos. [ECF No. 32, PageID.324].

Plaintiffs say Kefallinos is an employer under FLSA because he hired employees, including dancers; had control over employee work schedules; determined the rate and method of payment to the dancers; is under a legal obligation to maintain employee records; and is in control of significant functions of the business as a corporate officer and owner. To support their allegations, Plaintiffs submit Kefallinos' deposition testimony and affidavits signed by Merriwether and Coleman.

Except for his status as corporate officer and owner, Kefallinos says all the above assertions exaggerate and/or misstate the evidence on which they are based. He believes the undisputed evidence shows that he does not qualify as an "employer" under FLSA.

### III. Analysis

#### a. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(a), "[t]he Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The movant bears the initial burden to inform the Court of the basis for

his motion and must identify portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A fact is deemed material only if it "might affect the outcome of the lawsuit under the governing substantive law." *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If the movant satisfies this burden, the non-moving party must set forth specific facts showing a genuine issue for trial. *Id*. at 324.

A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Claims that are not supported by admissible evidence are insufficient to establish a factual dispute, as is the mere existence of a scintilla of evidence in support of the non-movant's position. *Alexander v. CareSource*, 576 F.3d 551, 560 (6th Cir. 2009).

The Court must view all submitted evidence, facts, and reasonable inferences in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The district court may not weigh

evidence or assess the credibility of witnesses in deciding the motion. *See Adams v. Metiva*, 31 F.3d 375, 378 (6th Cir.1994).

The necessary inquiry for this Court is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Patton v. Bearden*, 8 F.3d 343, 346 (6th Cir. 1993).

### b. Merriwether's Declaration

In his reply brief, Kefallinos objects to a declaration Merriwether submitted. Paragraphs 4-8 of Merriwether's declaration assert facts based on events that she allegedly witnessed and things that she allegedly heard managers say. She says she witnessed Kefallinos "hire multiple dancers" and she witnessed management fire other dancers and tell them "if you want your job back, you have to go talk to Dennis [Kefallinos]." [ECF No. 33-4, PageID.448].

In her sworn statement, Merriwether said "on multiple occasions, management would reprimand the dancers based on Denis Keffalinos' guidance," (e.g., "Dennis says you can't wear braids in your hair [Id]. Allegedly, a dancer asked management about implementing drink specials at the club and management responded: "Dennis would not ok drink specials." [Id]. According to Merriwether, a dancer asked management if it

could change the type of music played at the club and he responded: "no because Dennis doesn't want Bouzouki Club to be that kind of a bar." [Id].

Merriwether swore in her declaration that she either witnessed these events throughout her employment or heard managers make these statements.

Kefallinos says the declaration is inadmissible because it is not based on personal knowledge and contains hearsay. Kefallinos believes that, "other than Plaintiff's Declaration, which is largely based on second or third hand information, no record evidence exists that demonstrates Mr. Kefallinos was engaged in the business' day-to-day functions." [ECF 34, PageID.458]. For these reasons, he claims the evidence put forth in the declaration does not establish a genuine dispute.

Supporting and opposing affidavits must be made on personal knowledge, must set forth such facts as would be admissible in evidence, and must show affirmatively that the affiant is competent to testify to the matters stated. Fed. R. Civ. P. 56(e).

Kefallinos' competency and hearsay objections to Merriwether's declaration are misplaced.

6

First, anything contained in the declaration that Merriwether witnessed firsthand is based on her personal knowledge and she is presumably competent to testify.

Second, Merriwether's description of what she heard club managers say is not hearsay. Hearsay is an out of court statement used to prove the truth of the matter asserted in the statement. Fed. R. Evid. 801. None of the statements above is used to prove the truth of the matters they assert; they are all being used to prove that Kefallinos has control over certain day-to-day operations of the club.

Finally, a statement is not hearsay if it is offered against an opposing party and was made by that party's agent or employee on a matter within the scope of that relationship and while the employment or agency relationship existed. Fed. R. Evid. 801(ii)(2)(D).

Kefallinos is the owner of the club and he directly supervises the managers. He delegates responsibilities to them, and their decisions are reviewable by him. The managers are either employees or agents of Kefallinos. Merriwether alleges that she heard managers make statements pertaining to the type of music and hairstyles Kefallinos would allow, his preference regarding the prices of food and drinks; and the process

7

Kefallinos required dancers to follow to get their job back after they were fired.

Merriwether heard Bouzouki managers make statements as Kefallinos' agents or employees. All these statements pertain to matters within the scope of the employment or agency relationship and were made during the existence of that relationship. The statements are opposing party admissions and excluded from the definition of hearsay.

On the other hand, paragraphs 9-14 do not describe events that Merriwether witnessed or statements that she heard. She makes conclusory statements and alleges that throughout her employment, Kefallinos: was responsible for determining the prices of food and drinks, he determined the lighting and ambiance, he determined how many dancers could work each shift, he approved what was purchased with a petty cash fund; he instructed management as to what kind of customers were allowed inside the club; and he organized the club's holiday Christmas party. [ECF No. 33-3, PageID.449]. She does not allege facts showing that she has personal knowledge of the above statements.

The Court strikes paragraphs 9-14 of the declaration and will not rely on them in determining whether a genuine issue of fact exists concerning Kefallinos' status as an employer.

### c. Fair Labor Standards Act

FLSA requires employers to compensate nonexempt employees at least minimum wage for all hours worked, and at the premium rate of one and one-half time their base rate of pay for hours over 40 in a week. 29 U.S.C § 206(a), 207(a). "[E]mployer" is defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. 203(d).

### i. Whether Kefallinos is an Employer under FLSA

The employment relationship "is not fixed by labels that parties may attach to their relationship . . . [,] common law categories [or] classifications under other statutes." *Ellington v. City of E. Cleveland*, 689 F.3d 549, 555 (6th Cir. 2012) (*quoting Powell v. U.S. Cartridge Co.*, 339 U.S. 497, 528 (1950). The remedial nature of FLSA demands a definition of "employer" that is strikingly broad to cover some parties who might not qualify as such under a strict application of traditional agency law principles. *See Keller v. Miri Microsystems LLC*, 781 F.3d 799 (6th Cir. 2015).

9

The Sixth Circuit applies the "economic reality test" to determine whether an individual is an "employer" responsible for FLSA obligations. *Ellington*, 689 F.3d at 555 (6th Cir.2012); *U.S. Department of Labor v. Cole Enterprises*, Inc., 62 F.3d 775, 778 (6th Cir. 1995). Applying the economic reality test, the Sixth Circuit held that an "employer" within the meaning of FLSA is an individual who has operational control over a corporation. *see U.S. Dep't of Lab. v. Cole Enterprises, Inc.*, 62 F.3d 775, 778 (6th Cir. 1995).

Operational control is present where a person: (1) is an officer of a corporation, (2) has a significant ownership interest in it, (3) controls significant functions of the business, and (4) determines salaries and makes hiring decisions. *See Dole v. Elliott Travel & Tours, Inc*., 942 F.2d 962, 965 (6th Cir.1991) (superseded by statute on other grounds); *see also U.S. Dep't of Lab. v. Cole Enterprises, Inc*., 62 F.3d 775, 778 (6th Cir. 1995); *Fegley v. Higgins*, 19 F.3d 1126, 1131 (6th Cir. 1994), (cert. denied, 513 U.S. 875).

This approach requires a case-by-case analysis of "the circumstances of the whole business activity." *Ellington v. City of E. Cleveland*, 689 F.3d 549, 555 (6th Cir. 2012).

The motion papers refer to additional relevant factors relied on by other circuits applying the economic reality test. These factors include: "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Carter v. Dutchess Community College*, 735 F.2d 8, 12 (2d Cir. 1984).

It is undisputed that Kefallinos owns the Bouzouki and is its sole shareholder. But Kefallinos says Plaintiffs fail to establish that he was an "employer" under FLSA because he was not involved in the day-to-day activities. Notably, to "be classified as an 'employer,' within the meaning of FLSA, it is not required that a party have exclusive control of all the corporations' day-to-day functions but, rather, a party need only have operational control of significant aspects of a corporation's day-to-day functions." *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 966 (6th Cir. 1991).

Kefallinos testified that dancers are interviewed by the manager, who was supervised by Kefallinos; dancers are not on the club's payroll and their compensation was set by a former manager when the club opened. [ECF No. 32-2, PageID.353]. Kefallinos also claims in an affidavit that he

11

does not participate in the supervision or control of employee work schedules or conditions of employment. [ECF No. 32-3, PageID.390]. Finally, Kefallinos says he did not compile or maintain any employment records with respect to the dancers. [Id].

The parties simply disagree concerning the level of operational control Kefallinos exercised.

Plaintiffs submit Kefallinos' deposition testimony. He described the process of hiring new dancers. This included dancers getting police clearance and filling out paperwork. .." [ECF No. 32-2, PageID.357]. His testimony suggests that he could have played a role in establishing the format of the hiring process.

Regarding work schedules, Kefallinos testified that "I tell the dancers to let me know what day [they] work. . . So, I assume today I have ten dancers on the schedule, [and that] they are going to work . . .  So long as I have five, six dancers, I'm happy. [ECF No. 32-2, PageID.353]. Although he testified that the managers are in charge of day-to-day work schedules, it appears that Kefallinos has some control over work schedules as well.

Merriwether states in her Declaration that during her employment with Defendants, she witnessed Kefallinos "hire multiple dancers." [ECF No. 33-

12

3, PageID.448]. Merriwether also allegedly witnessed managers fire dancers, and they were told, "if you want your job back, you have to talk to Dennis [Kefallinos]." [Id]. Merriwether directly contradicts Kefallinos' assertions and provides her own sworn statements, in addition to Kefallinos' testimony, from which a trier of fact can conclude that Kefallinos controlled dancers and actively participated in their hiring and firing.

The record also suggests that Kefallinos controlled the pay structure; he testified that in establishing the pay structure, he acted on the advice of his managers.

> Q: In establishing how you would pay your dancers, [the manager] advised you as to how he thought you should pay your dancers or not pay your dancers?
>
> [Kefallinos]: No, he never told me to pay the dancers, because . . . I follow other club rules. None of the clubs in the state pay the dancers.

ECF No. 32-2, PageID.355]. Kefallinos' testimony implies that he rendered the final decision on how the compensation model would be structured. When asked if the manager made such a decision, Kefallinos clarified that the manager did not determine how the dancers would be paid. [Id]. Instead, the managers established the format for day-to-day operations concerning safety, sexual solicitation, and drug use. [Id].

Kefallinos also said it is "important to him and his club to run a clean operation." [ECF No. 32-2, PageID.355]. He expressed his responsibility to assure that "we're running a clean club." [Id]. He also expressed his personal responsibility to check with the managers to "make sure everything's okay . . . if [they] needed anything." [ECF No. 32-2, PageID.354].

Kefallinos' own testimony supports a finding that, minimally, he shared operational control of the club. And a reasonable jury could find that he exercised authority to determine the pay structure, work schedules, and the overall safety operations of the club. *See Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir.1999) (noting that "[c]ontrol may be restricted, or exercised only occasionally, without removing the employment relationship from the protections of the FLSA, since such limitations on control do not diminish the significance of its existence" (internal quotation marks and alterations omitted)).

The economic reality test factors weigh in favor of finding a genuine issue of fact regarding whether Kefallinos had operational control over how dancers were paid, their work schedules, and the responsibilities of managers in assuring the club runs "clean." A reasonable jury could conclude that he was an "employer" under FLSA.

The Court **DENIES** Kefallinos's motion for summary judgment.

**ORDERED.**

_____

Victoria A. Roberts

United States District Judge

Dated: 5/13/2022